## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

EUGENE REED,

      Petitioner,

v.                                Case No. 5:17-cv-0259-Oc-02PRL

SECRETARY, DEPARTMENT OF
CORRECTIONS,

      Respondent.

_____/

## **ORDER**

On June 9, 2017, Petitioner Eugene Reed filed his Petition under 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody. Dkt. 1. He seeks relief from an April 7, 2011, state court conviction. *Id.* at 1. Respondent filed a response. Dkt. 8. While the initial Petition was under consideration by this Court, Petitioner filed an Amended Petition, which the Court later accepted. Dkts. 21 & 30. Respondent filed a separate response to the Amended Petition. Dkt. 31. The Court finds that a hearing is unnecessary and denies the Amended Petition.

### Factual Background

The charge involved Petitioner and others committing an armed home invasion robbery in 2008, while wearing masks. Dkt. 9-1 at 49–51. The female victim and her male co-resident victim testified at trial. Dkt. 9-2 at 187 & 221. The

female stated a masked, heavyset perpetrator, older than the other invaders and wearing green Dickie shorts, dragged her by her hair from the kitchen to the bathroom where he penetrated her mouth and anus with a revolver barrel, also pressing it into her crotch area. *Id.* at 191–95. The perpetrator did this both inside and outside the house, with force, until the victim, stripped naked by the perpetrator, soiled herself. *Id.* at 194–96, 203. A second home invader, Jonathan Starks, then forced her to perform oral sex on him until he ejaculated into her mouth. *Id.* The evidence was that Petitioner then jostled the victim around to force her to spit out the semen on the ground and not retain the evidence in her mouth. *See* Dkt. 9-1 at 49–51

At trial, Petitioner was identified as the heavyset perpetrator in the green Dickie shorts by the following: Ethan Hatchett, a fellow participant in the subject home invasion, testified that the group including an armed Petitioner went to the robbery in Petitioner's red Durango and a second car. Dkt. 9-3 at 27, 30. Petitioner wore green shorts, Hatchett testified, and assaulted the female. *Id.* at 28, 30, 35. Petitioner took the female outside. *Id.* at 38–40. Co-invader Starks testified that Petitioner was wearing green Dickies and a ski mask. *Id.* at 120. Starks further testified that Petitioner took the victim outside, slammed her to the ground, and defiled her with the pistol. *Id.* at 124–25. Petitioner then cheered Starks on while Starks sodomized the victim. Dkt. 9-2 at 205. Codefendant Curtis Duncan testified

that he drove with K.C. Starks, Jonathan Starks, Ethan Hatchett, Christopher Choung, and Petitioner on the night of the home invasion, but he did not go into the home.[1] *Id.* at 342–44. Tire tracks from the scene matched the Red Durango, titled in Petitioner's sister's name. Dkt. 9-3 at 275, 399–400. Photos of Petitioner at the time showed him to match the perpetrator's physical description as to body size and hair style. Dkt. 9-2 at 255–56 (State's Exhibit 16). Shoe prints in the mud leaving the scene were similar to shoes of Petitioner. Dkt. 9-3 at 268–69.

### Procedural Background

On April 7, 2011, Petitioner was convicted by a jury of burglary while armed and sexual battery with a deadly weapon; and, on June 17, 2011, Petitioner was sentenced to life imprisonment. Dkt. 8 at 2. Petitioner directly appealed his conviction to the state appellate court. The state appellate court affirmed his conviction and sentence, per curiam on January 2, 2013. *Id.*

On September 9, 2013, Petitioner filed a Rule 3.850 motion for postconviction relief. Dkt. 9-3 at 876. On May 2, 2014, the trial court summarily denied grounds one, seven, eight, nine, twelve, thirteen, fourteen, fifteen, seventeen, and nineteen; and, the trial dismissed grounds eleven and sixteen with leave to amend. Dkt. 9-4 at 181–96. On October 16, 2015, the trial court, after

---

[1] Four listed State witnesses to Petitioner's trial (Jonathan Starks, Ethan Hatchett, Curtis Duncan, and Christopher Choung) were involved in an earlier home invasion not involving Petitioner. Dkt. 9-1 at 180. Testimony about the earlier home invasion was limited. *See* discussion *infra*.

conducting an evidentiary hearing, denied grounds two, three, four, five, six, ten, and eighteen. Dkt. 9-5 at 182–90. On February 7, 2017, the state appellate court affirmed the denial per curiam. Dkt. 9-5 at 317; *see also Reed v. State*, 229 So. 3d 1249 (Fla. 5th DCA 2017). On June 9, 2017, Petitioner filed the instant federal Petition for writ of habeas corpus. Dkt. 1.

On May 7, 2018, Petitioner filed a second Rule 3.850 motion for postconviction relief in state court. Dkt. 32-1 at 6–20. On June 6, 2018, the trial court dismissed the second Rule 3.850 motion as successive. *Id.* at 26–30. This was affirmed on December 4, 2018. *Reed v. State*, 263 So. 3d 785 (Fla. 5th DCA 2018). On June 7, 2019, in this federal matter Petitioner filed an Amended Petition which included claims from the second Rule 3.850 motion. Dkt. 21. The Court allowed the Amended Petition and granted Respondent leave to file an additional response. Dkts. 29 & 30.

## Standards of Review

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998). AEDPA "establishes a highly deferential standard for reviewing state court judgments." *Parker v. Sec'y for Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003). This type of review does not allow relief of a state court conviction on a claim

that was adjudicated on the merits in the State court proceedings' unless the state court's decision was '(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'

*Nejad v. Attorney Gen., State of Ga.*, 830 F.3d 1280, 1288 (11th Cir. 2016) (quoting 28 U.S.C. § 2254(d)).

"Clearly established Federal law" means holdings of the U.S. Supreme Court "as of the time of the relevant state-court decision." *Id.* at 1288–89. "Contrary to" requires a state court conclusion "opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 1289 (citations omitted) (alterations in original). The "unreasonable application" clause applies only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (citation omitted) (alterations in original).

However, a state court's factual determination "is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Id.* (citation omitted). AEDPA "requires federal habeas courts to presume the correctness of state court's factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Id.* (citation omitted). This is a

"demanding but not insatiable standard, requiring proof that a claim is highly probable." *Id.* (citation and internal quotation marks omitted). Further, this standard applies even if the state court does not provide the reasoning behind its decision because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002).

Counsel is ineffective under the Sixth Amendment if "(1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense such that petitioner was deprived of a fair trial." *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). But in the habeas context, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citation and internal quotation marks omitted). "If there is 'any reasonable argument that counsel satisfied *Strickland*'s deferential standard,' then a federal court may not disturb a state-court decision denying the claim." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014) (citation omitted).

**Discussion**

A. Timeliness

Federal habeas petitions are subject to a one-year statute of limitation. 28 U.S.C. § 2244(d)(1) (2018). It begins running on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* at 2244(d)(1)(A). The clock stops running for the "time during which a properly filed application for State post-conviction . . . judgment or claim is pending[.]" *Id.* § 2244(d)(2).

Petitioner was sentenced on June 17, 2011. Dkt. 9-2 at 122–23. On January 2, 2013, Petitioner's judgment and sentence were affirmed per curiam. Dkt. 9-3 at 841. The mandate was issued on February 21, 2013. *Id.* at 852. On September 9, 2013, Petitioner filed a Rule 3.850 motion for postconviction relief. *Id.* at 876.

On May 2, 2014, the trial court summarily denied grounds one, seven, eight, nine, twelve, thirteen, fourteen, fifteen, seventeen, and nineteen; and, the trial dismissed grounds eleven and sixteen with leave to amend. Dkt. 9-4 at 181–96. On October 16, 2015, the trial court, after conducting an evidentiary hearing, denied grounds two, three, four, five, six, ten, and eighteen. Dkt. 9-5 at 182–90. On February 7, 2017, the state appellate court per curiam affirmed the denial. Dkt. 9-5 at 317; *see also Reed v. State*, 229 So. 3d 1249 (Fla. 5th DCA 2017). The mandate

was issued on May 8, 2017. Dkt. 9-5 at 329. Accordingly, this initial petition is well within the one-year requirement and is timely.

B. Merits

Petitioner raises twelve grounds for relief in his Amended Petition. Dkt. 21. The Respondent rebuts each of these grounds as either unmeritorious or unexhausted. Dkts. 8 & 31. The Court will address each ground in turn. To the extent any of these grounds include sufficiency issues, the Petitioner testified, and the jury chose to disbelieve his testimony. Dkt. 9-3 at 537. This would appear to resolve any sufficiency issues.

1. Ground One

In Ground One, Petitioner argues the trial court erred in excluding the testimony of three police officers about the arrest of Germaine Little in violation of his Fifth, Sixth and Fourteenth Amendment rights. Dkt. 21 at 3. Petitioner alleges that Germain Little had been arrest on the day of the crime with a black mask and that police initially thought he might be a suspect. The trial court determined evidence about Mr. Little was irrelevant because he did not match the description given by the victim of her attacker. Based on the record before the Court, this decision was not unreasonable.

While a criminal defendant has a right to present a complete defense, a trial court may exclude evidence proffered by a defendant to prove that someone else

committed the crime when it is not sufficiently connected to the crime. *King v. State*, 89 So. 3d 209, 223–24 (Fla. 2012) (quoting *Holmes v. South Carolina*, 547 U.S. 319, 326–27 (2006)). Mr. Little was described as having a slight build with short hair, while the victim described the assailant as large and with braids, which matched the Petitioner's description. Dkt. 8 at 6–7.

In his reply brief, Petitioner asserts that the victim did not initially say her assailant was big. Dkt. 16 at 2. But this is contradicted by his counsel's questioning of the victim in which counsel asks the victim if she initially told law enforcement her assailant was five-ten or five-eleven and heavier, either 230 or 250 pounds. Trial Transcript at 53.[2] Thus, it was not unreasonable for the trial court to exclude evidence relating to Mr. Little because he did not match the description the victim gave of her assailant. As a result, Ground One does not present a claim where federal habeas relief is appropriate.

2. Ground Two

In Ground Two, Petitioner appears to be making several different arguments about both prosecution and defense witnesses. Ground Two is labeled as "it was error to deny petitioner's motion for mistrial after the court and the prosecutor threatened a defense witness with a revocation of his plea agreement, prosecution

---

[2] The trial transcript can be found at Dkt. 9 Exhibit A. For clarity throughout this Order the Court will refer to all references to the trial transcripts as T.T. at xx.

for perjury and imposition of a life sentence unless he chose to give testimony favorable to the prosecution[.]" Dkt. 21 at 4. But the supporting facts—in both the initial Petition and the Amended Petition—involve allegations of the trial court refusing to allow Petitioner's counsel to impeach three prosecution witnesses with their plea agreements and lies to officers. Dkts. 1 at 7–8 & 21 at 4.

To the extent Ground Two is an argument about Petitioner's counsel being unable to impeach the prosecution's witnesses with their plea agreements and prior lies to officer, it must be denied. The issue of what the Petitioner's counsel could cross on was discussed at length during the trial. T.T. at 121–27, 191–216, 308–32.

Contrary to the Petitioner's assertions, his counsel was able to ask the prosecution's witnesses—Petitioner's codefendants—about their plea agreements and their previous lies about their involvement in the burglary. T.T. at 216–19. Petitioner's counsel was only prevented from asking about lies involving a second burglary in which Petitioner was not charged with nor alleged to have been involved.[3] The trial judge determined this was irrelevant as a collateral matter. Petitioner was able to elicit from a witness, Curtis Duncan, that he had initially lied about his involvement in the robbery but later changed his testimony to get a plea deal for a ten-year sentence rather than face two life sentences. Ethan Hatchett also

---

[3] An earlier home invasion burglary happened at a different house prior to the burglary involving Petitioner. While many of Petitioner's codefendants participated in both crimes, it is undisputed Petitioner only participated in the later one.

testified that he initially denied any involvement when questioned by law enforcement but later received a plea agreement and was sentenced to twenty-five years in prison and a lifetime of probation. T.T. at 333–36. Jonathan Starks testified that because he was subpoenaed and not testifying as part of a guilty plea, nothing he said could be used against him in a later prosecution for these events, but he could still be prosecuted by different prosecutors. T.T. at 367–68. Mr. Starks admitted he was involved in the events and that he had originally said he was not involved and that he had been covering for his uncle K.C. Starks. T.T. at 395 & 400. This evidence provided ample basis for the jury to determine the witnesses' bias when weighing their credibility. Thus, the trial judge's ruling preventing further cross examination on the first burglary was not unreasonable and Petitioner cannot prove he was prejudiced.

Alternatively, Petitioner argues in the heading of Ground Two and in his reply brief that the trial court improperly refused to grant a mistrial after both the prosecutor and the judge made references to a possible perjury charge or a revocation of the plea agreement when a defense witness testified differently at trial than he had testified previously about the event.

The Court has reviewed the trial transcripts. The exchanges at issue can be summarized as follows: Codefendant Choung had pled guilty to the home invasion. T.T. at 702. At Choung's sentencing he implicated Petitioner in this crime. T.T. at

718–20. But during Petitioner's jury trial, Choung said Petitioner was not involved. T.T. at 717–17. Outside the presence of the jury, the judge informed Christopher Choung that part of his sentence included testifying truthfully at Petitioner's jury trial and that if he does not "testify truthfully in this proceeding, I'm thinking that we might be able to go back and resentence you, and you will be facing life." T.T. at 727. After the jury was called back in the prosecutor asked "if we were to play that audio [from Choung's sentencing] for the jury and you, in fact, did say what this transcript says, that [Petitioner] was there, would that be the truth or a lie?" T.T. at 729. The witness answered, "It would be a lie because I don't recall saying . . . [Petitioner] was there." T.T. at 729. The prosecutor then asked, "so if you did lie under oath about [Petitioner's] presence, it would have been at the time you were being sentenced and looking out for yourself in front of Judge Stancil?" T.T. at 729. To which the witness answered "yes, sir." T.T. at 729. The prosecutor then commented "Okay. Just want to make sure I have the date for the perjury charge right." T.T. at 729. To which the defense attorney objected and moved for a mistrial at sidebar. T.T. at 729–30. The Court's response to these motions beyond denying them is not in the transcript.

After concluding the sidebar, the Judge said to the jury "Whether or not subsequent proceedings take place is irrelevant to these proceedings here." T.T. at 733. Immediately on redirect, Petitioner's counsel asked the witness "as you are

sitting here today, do you have any reason to be untruthful to this jury?" T.T. at 735. The witness responded "no, sir." *Id.* The final question by Petitioner's counsel was "have you told the jury the truth?" *Id.* The transcript says there was no audible response from the witness, but after that defense counsel said "all right. Thank you, sir." *Id.*

First, Petitioner alleges there was a violation when the trial judge referred to resentencing the witness. Importantly this comment was made outside the presence of the jury and did not cause the witness to change his exculpatory testimony. In *Webb v. Texas*, the Supreme Court found that the judge had used "unnecessarily strong terms" which could exert influence on the defense witness and cause him to refuse to testify. 409 U.S. 95, 97–98 (1972). In *Muhammad v. State*, the Florida Supreme Court distinguished between cases where the judge advises a witness about the consequences of failing to testify and cases where the judge pressures a witness to testify consistently with their prior statements. 782 So. 2d 343, 357 (Fla. 2001), *holding modified on other grounds by Marquardt v. State*, 156 So. 3d 464 (Fla. 2015). Mr. Choung did not change his trial testimony after the judge's statements. Instead, he testified consistently that Petitioner did not participate in the burglary. Thus, the trial judge's statements did not prejudice Petitioner.

Finally, Petitioner alleges the trial court should have granted a mistrial because of the prosecutor's comment about having the date right for the perjury

charge. Dkt. 16 at 4. The trial judge instructed the jury the comment was irrelevant. T.T. at 733. In the Petitioner's direct appeal, he cited *Davis v. State* to support his argument. 334 So. 2d 823 (Fla. 1st DCA 1976). In *Davis*, the prosecutor met with the witness the morning before her testimony and upon finding out that she was going to refuse to testify and say that she saw nothing, threatened her with a perjury charge and 15 years in prison if she did not tell the truth—clearly implying that the truth was her prior statement against the defendant. *Id.* at 826. The court found that this threat of prosecution constituted "undue pressure" and was cause for a new trial. *Id*. The facts here do not suggest the undue pressure that was in *Davis*.

Importantly, it was Mr. Choung, not the prosecutor, who when faced with his inconsistent statements stated that his prior, non-trial testimony was a lie. The prosecutor confirmed that Mr. Choung was referring to his statements at his sentencing when he would have been "looking out for [himself]" that were the lie. T.T. at 729. The comment about perjury was made after this, at the very end of the prosecution's cross examination and only after Mr. Choung said that his prior sworn statement was a lie. It therefore could not cause undue pressure on Mr. Choung to change his testimony and, in fact, did not cause him to change his testimony at trial where he consistently testified that Petitioner was not a part of the burglary. Petitioner's attorney on redirect further established that Mr. Choung

was not lying and had no reason to lie at Petitioner's trial. *Id.* at 734–35. The

implication from the prosecutor's comment would be that Mr. Choung could be

charged with perjury for his prior testimony at sentencing, and not that his

testimony at Petitioner's trial was a lie. Thus, Ground Two is denied.

3.  Ground Three

In Ground Three, Petitioner argues that his counsel was ineffective for

failing to move to recuse the trial judge because the judge allegedly had a

relationship with the victim's family. Dkt. 21 at 5. During the Rule 3.850 hearing

Petitioner's attorney explained that he thought it would be in Petitioner's best

interest to try the case in front of Judge Stancil because the judge would allow the

attorneys latitude in arguing their positions and that if Judge Stancil had known

individuals involved in the case he would have recused himself.[4]

Ineffective assistance of counsel claims are determined under *Strickland*

which requires proof of both deficient performance and consequent prejudice. 466

U.S. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance

and made all significant decisions in the exercise of reasonable professional

judgment." *Id.* at 690. "[A] court deciding an actual ineffectiveness claim must

judge the reasonableness of counsel's challenged conduct on the facts of the

---

[4] Judge Stancil notes in his order denying postconviction relief that he did not know the victim and that, if he had, he would have recused himself.

particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91. Petitioner cannot meet this burden by merely alleging that the judge was biased and that his attorney was ineffective for failing to move to recuse him. The record indicated that Petitioner's attorney made a strategic choice when recommending it was in Petitioner's best interest to have his case tried before Judge Stancil. Accordingly, Ground Three does not present an issue appropriate for federal habeas relief.

4. Ground Four

In Ground Four, Petitioner argues his trial counsel was ineffective for failing to depose Christopher Choung and detective Rhonda Stroup who allegedly could have impeached prosecution witness and codefendant, Ethan Hatchett's trial testimony in which Mr. Hatchett allegedly said Mr. Hatchett did not know one Jon Rappaport. Respondent argues this testimony does not undermine Mr. Hatchett's corroborated testimony that Petitioner was involved in the crime. Dkt. 8 at 17.

As a preliminary matter, it is not clear to the Court that there was anything to impeach in Mr. Hatchett's testimony. Mr. Hatchett did not deny knowing Mr.

Rappaport at trial. After a review of Mr. Hatchett's trial testimony, the only time he was asked about Mr. Rappaport was on a proffered cross-examination where he said Mr. Rappaport was a friend from Leesburg who dropped him off at the prior home invasion the Petitioner was not involved in. T.T. at 313.

However, even assuming there was an element of Mr. Hatchett's testimony that could have been impeached, Petitioner has failed to allege how impeaching Mr. Hatchett's mere knowledge of Jon Rappaport could change the outcome of his trial or why the state court's decision on this matter was contrary to or an unreasonable application of clearly established federal law. The trial court excluded testimony regarding Mr. Rappaport because, at most, he could only be tangentially connected to the home invasion that did not involve Petitioner. Therefore, it was not relevant to Petitioner's trial.

Petitioner's appears to be arguing that Mr. Rappaport was involved in the home invasion which Petitioner was convicted for, and the prosecution's witnesses are covering for him and blaming the crime on Petitioner. But no evidence supports this in the record. The testimony of Christopher Choung and detective Rhonda Stroup, even if it were to impeach Mr. Hatchett, fails to demonstrate deficient performance or prejudice.

Mr. Choung testified at trial that he did not know Jon Rappaport. T.T. at 708. When asked if Mr. Hatchett was going to implicate Petitioner wrongfully in

the burglary, Mr. Choung's response was "um, not—all he said was he just didn't like him, and he feel like that [Petitioner] should get in trouble for it." T.T. at 716. Mr. Choung then testified that Petitioner was not part of the home invasion. *Id.* Mr. Choung's proffered testimony was "I guess Jon [Rappaport] was about to get in trouble, and [Mr. Hatchett] felt like he wanted [Petitioner] to get in trouble." T.T. at 711. But the only statement Mr. Choung attributed to Mr. Hatchett was "I don't like that guy anyway[.]" *Id.* Thus, it was only Mr. Choung's speculation about Jon Rappaport—a man he did not know and who he did not say was involved in the home invasion—which was excluded. But Mr. Choung testified that Mr. Hatchett did not like Petitioner and that Petitioner was not at the home invasion. Thus, Petitioner cannot prove he was prejudiced by excluding testimony about Jon Rappaport.

Detective Rhonda Stroup proffered that she was not aware that Mr. Rappaport was involved in either of the home invasions. T.T. at 694. And that she believed Mr. Hatchett indicated in a prior statement to a different detective that Mr. Rappaport dropped Mr. Hatchett off at the residence of the home invasion that Petitioner was never linked to. T.T. at 694. The trial judge determined this was not relevant because Petitioner was never accused of being involved with that home invasion. T.T. at 697.

Petitioner is unable to show that he was prejudiced by excluding this

testimony because testimony was admitted that Mr. Hatchett did not like Petitioner and Choung said Petitioner was not there. Petitioner was not prejudiced by the exclusion of testimony about Mr. Rappaport because no one testified that Mr. Rappaport was involved in the home invasion for which Petitioner was convicted. Accordingly, Ground Four does not present an issue appropriate for federal habeas relief.

    5.  <u>Ground Five</u>

In Ground Five, Petitioner alleges his counsel was ineffective for failing to strike the entire venire panel when a statement of a potential juror allegedly tainted the entire panel. Dkt. 21 at 6. The Court evaluates ineffective assistance of counsel during jury selection in the same way as any other *Strickland* claim. *Harvey v. Warden*, 629 F.3d 1228, 1243 (11th Cir. 2011). In a postconviction context, Florida law "has an actual bias requirement." *Fennell v. Sec'y, Fla. Dep't of Corr.*, 582 F. App'x 828, 832 (11th Cir. 2014). The Petitioner must show the juror was biased "and the evidence of bias must be plain on the face of the record." *Id.* (quoting *Carratelli v. State*, 961 So. 2d 312, 323 (Fla. 2007)). Petitioner cannot meet this burden.

Petitioner alleges that during voir dire a juror asked "so, what we are here for is to be a jury for a case of one bad guy versus another bad guy." Dkt. 21 at 7. Respondent argues that this question was never asked. Dkt. 8 at 18. The

postconviction court found that this statement was not in the record. Dkt. 9 Exhibit H at 213–14. Petitioner did not identify where this statement was in the record. The Court reviewed the transcripts from jury selection in their entirety and found no such statement was made by either a potential juror or an actual juror.

The closest statement occurred when the prosecutor was asking jurors if they would feel differently if drugs were the motive for the crime and they found out one of the victims had drugs. *Id.* at 125. An unidentified juror asked "is your point that the intent was to go after drugs and there is a—would it be like criminals going after criminals? Is that what your point is?" *Id.* at 126. But when asked if that affected how the juror would view the case, the juror responded, "I'm fine with that." *Id.* This line of questioning was not directed at the Petitioner's bad character but rather if jurors could overlook the fact that the male victim had illicit drugs. As such, even if this was the statement Petitioner was referencing, he has failed to prove that his attorney's conduct fell below the objective standard or that he was prejudiced, as there is no evidence this juror served on the jury or that they were actually biased against the Petitioner.

Thus, Petitioner has failed to meet the *Strickland* standard because there is no evidence that there was a biased juror to which counsel could have objected or that a biased juror served on Petitioner's jury. Therefore, Ground Four does not present an issue appropriate for federal habeas relief.

6. <u>Ground Six</u>

In Ground Six Petitioner alleges his counsel was ineffective for failing to object to improper statements made in the state's closing argument regarding the plea agreements his two codefendants received. Dkt. 21 at 7. Respondent argues the deals were adequately represented to the jury, so Petitioner cannot establish deficient performance or prejudice. Dkt. 8 at 21. The state court found the prosecution did not mislead the jury regarding the plea agreements and that Petitioner's counsel's performance was not deficient. Dkt. 9 Exhibit H at 211.

The record reflects the substance of each of the plea agreements. The record also reflects what the two codefendants sentenced before Petitioner's trial received. Mr. Duncan testified that he was facing a life sentence but received ten years in prison followed by ten years' probation. T.T. at 216–18. Mr. Hatchett testified that he received a twenty-five-year sentence followed by a lifetime of probation. T.T. at 273–74. Jonathan Starks, another of the codefendants, did not have a plea agreement and his charges from the home invasion were still pending when he testified at Petitioner's trial. T.T. at 367–69.

Although the heading of Ground Six presents an issue of statements made during the prosecution's closing argument, Petitioner does not refer to any improper statement made by the prosecution in their closing argument. Instead, Petitioner appears to allege—without providing evidence—that there was a proffer

between codefendant Starks and a prior prosecutor on the case. Dkt. 21 at 8. However, there is no evidence in the record of any plea agreement having been offered to Mr. Starks. Further, Mr. Starks testimony at trial explained the benefit he was getting by testifying, which was that his statements could not be used against him and that those specific prosecutors could not prosecute him for this offense. T.T. at 367–69.[5] So, Petitioner cannot demonstrate deficient performance or prejudice. Thus, Ground Six does not present an issue appropriate for federal habeas relief.

    7. <u>Ground Seven</u>

In Ground Seven, Petitioner alleges ineffective assistance of appellate counsel for failing to raise the issue of the court improperly allowing in hearsay over trial counsel's objection. Respondent argues that the testimony in question was not hearsay and therefore was properly admitted.

The alleged hearsay statements were about actions in a movie watched by Mr. Hatchett, Mr. Duncan, Mr. Starks, and Petitioner before the home invasion. T.T. at 297–99. In the movie the main character commits the same sexual battery with a gun on a woman that Petitioner allegedly committed on the victim. T.T. at 299. The prosecution had Mr. Hatchett testify about this to explain where the

---

[5] The prosecutors involved in Petitioner's case could not personally prosecute Mr. Starks but other prosecutors who were not involved could handle that prosecution. T.T. at 364–66.

Petitioner could have gotten the idea. T.T. at 297–307. Petitioner's trial counsel objected arguing the movie was hearsay. T.T. 300–01.

"This Court has limited authority, on habeas review, to reevaluate state court evidentiary determinations." *Land v. Sec'y, Dep't of Corr.*, No. 8:04-CV-2524-T-27TGW, 2008 WL 816707, at *10 (M.D. Fla. Mar. 26, 2008). The Court grants great deference to state evidentiary rulings and only grants relief when the evidentiary ruling makes the proceeding fundamentally unfair thus depriving the defendant of due process. *Id.*; *Cruz v. Fla. Attorney Gen.*, No. 2:16-CV-49-FTM-38CM, 2019 WL 1101620, at *6 (M.D. Fla. Mar. 7, 2019) ("Habeas relief is warranted only when the error 'so infused the trial with unfairness as to deny due process of law.'") (quoting *Lisenba v. California*, 314 U.S. 219, 228 (1941)). The Eleventh Circuit "has established a well-documented resistance to granting relief when a habeas petition alleges a federal claim based merely on a state evidentiary ruling." *Shaw v. Boney*, 695 F.2d 528, 530 (11th Cir. 1983) (citing *Woods v. Estelle*, 547 F.2d 269, 271 (5th Cir.), *cert. denied*, 434 U.S. 902, (1977)). "For the most part, evidentiary rulings simply do not raise questions of a constitutional magnitude." *Keno v. Crosby*, No. 803CV-1230-T-23TBM, 2006 WL 2711599, at *8 (M.D. Fla. Sept. 21, 2006).

Petitioner has not established that this ruling made his proceeding fundamentally unfair, thus depriving him of due process. The matter seems to have

been offered to show a state of mind. Even if the statement was improperly admitted, it established that almost all the codefendants saw this movie at the same time before the home invasion and sexual battery. This does not deny Petitioner due process, so the Court will defer to the state court's evidentiary ruling.

As the state court's ruling provides no basis for federal habeas relief, there is no basis for the Court to find appellate counsel was ineffective. Thus, Ground Seven does not present an issue appropriate for federal habeas relief.

8. Ground Eight

In Ground Eight, Petitioner alleges that his appellate counsel was ineffective for failing to raise a claim that the trial court erred by not granting a judgment of acquittal. Dkt. 21 at 9. Petitioner alleges there was no physical evidence placing him at the scene and that his codefendants testimony was not credible. *Id.* at 9–10. Yet Petitioner testified and was disbelieved by the jury. The State argues that Petitioner cannot meet the high AEDPA standard.

"Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*." *Brooks v. Comm'r, Alabama Dep't of Corr.*, 719 F.3d 1292, 1300 (11th Cir. 2013) (quoting *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009) (*per curiam*)). A court must review the merits of the omitted claim to determine prejudice. *Dinkens v. Sec'y, Dep't of Corr.*, 556 F. App'x 811, 813 (11th Cir. 2014). "Counsel's performance

will be deemed prejudicial if we find that 'the neglected claim would have a reasonable probability of success on appeal.'" *Id.* (quoting *Heath v. Jones*, 941 F.2d 1126, 1132 (11th Cir. 1991)). "In many (perhaps most) cases, counsel may err without being deficient or may be deficient without causing prejudice." *Overstreet v. Warden*, 811 F.3d 1283, 1288 (11th Cir. 2016).

Trial counsel's motion for acquittal was based on the lack of physical evidence placing Petitioner on the scene, the fact that the victim did not identify Petitioner as the perpetrator, and that the testimony of the codefendants was unreliable. T.T. at 575–76. The judge denied the motion because the credibility of the witnesses is decided by the jury. *Id.* at 576. Issues regarding the codefendants' credibility and the limitations placed on the Petitioner's ability to cross examine them was part of Point I of Petitioner's initial appeal. So while a reasonable attorney may have chosen to argue that the trial court erred in not granting the motion for acquittal, it was not unreasonable for appellate counsel to decide against pursuing that credibility ground, in favor of focusing attention on other grounds.

Further, even if this was deficient performance, Petitioner has failed to prove that he would have succeeded on appealing this ground. Many of the underlying facts Petitioner argues to support this claim are the same arguments that were unsuccessful in his initial appeal. Accordingly, Ground Eight does not present an issue appropriate for federal habeas relief.

9. Ground Nine

In Ground Nine, Petitioner alleges that his appellate counsel was ineffective for failing to raise a claim that the trial court erred by not allowing the defense to present defense witnesses regarding the arrest of Germaine Little. Dkt. 21 at 10. Respondent argues that this ground is meritless because Petitioner's appellate counsel made this argument on direct appeal. In reviewing the record, the Court finds that Petitioner's appellate counsel made this argument on appeal. Dkt. 9 Exhibit B at 14. Thus, Petitioner cannot prove deficient performance and this ground must be denied.

10. Grounds Ten, Eleven, and Twelve

Grounds Ten, Eleven, and Twelve all involve allegations surrounding newly discovered evidence. These claims were filed in a second state postconviction proceeding and allowed as an amendment to the Petitioner's original habeas claims. In Ground Ten, Petitioner alleges that newly discovered evidence proves he was deprived of the right to present his case, thus depriving him of a right to a fair trial. Dkt. 21 at 11. Ground Eleven alleges the newly discovered evidence shows the state knowingly used perjured testimony in violation of *Giglio v. United States*, 405 U.S. 150 (1732). *Id.* 12–13. Ground Twelve alleges that Petitioner was denied effective assistance of counsel because of the failure to discover this evidence. *Id.* at 14. The state postconviction court found that this evidence did not qualify as

newly discovered because the evidence could have been discovered before his first Rule 3.850 motion. Dkt. 32-1 at 28. Additionally, the postconviction court found that there was no reasonable probability that the evidence would have produced an acquittal or a lesser sentence. *Id.* at 29.

Petitioner alleges that after his initial postconviction proceedings he received via public records request the chain of custody inventory for a cigarette butt admitted at his trial. Dkt. 21 at 11. Petitioner alleges that the chain of custody inventory shows that prosecution witness, Nicole Lee, analyzed the cigarette butt in June 2008 instead of September 2008 as she testified to at trial. *Id.* Respondent argues that the state court rejected this claim because of a state procedural bar and that Petitioner has not demonstrated cause for the default or actual prejudice as a result. Dkt. 31 at 10.

When "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review . . . is barred." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Here, the state court found that this evidence did not qualify as newly discovered under Florida law and that his state petition was successive. Thus, federal habeas review of these claims is barred.

"A procedurally defaulted claim can support federal habeas relief in only two narrow situations. First, the petitioner may demonstrate cause and prejudice.

Cause exists if there was 'some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule.'" *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Petitioner presented no evidence of an external factor which prevented him from complying with the procedural rule.

Second, a federal court can review a procedurally defaulted claim "if enforcing the default would result in a fundamental miscarriage of justice. This exception applies if the petitioner can show that, in light of new evidence, it is probable that no reasonable juror would have convicted him." *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Petitioner has not made such a showing. The cigarette butt which Ms. Lee testified about did not contain Petitioner's DNA, a fact she testified to on both direct and cross examination at trial. T.T. at 260–62, 269–70. Thus, even assuming Petitioner is correct that the testing occurred in June and the cigarette butt was related to the first home invasion, this does not establish that no reasonable juror would have convicted him. At most the evidence would have been excluded like the other evidence connected solely to the first home invasion. As the cigarette butt did not contain Petitioner's DNA it never connected him to the crime of conviction, so its exclusion would not have changed the outcome of the trial. Thus, Petitioner cannot establish a fundamental miscarriage of justice. Accordingly, the procedural default cannot be excused and Grounds Ten,

Eleven, and Twelve must be denied.

## Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Proceedings for the United States District Courts; *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To merit a COA, Petitioner must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Petitioner is not entitled to either a COA or leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is denied. Leave to appeal *in forma pauperis* is denied. Petitioner must obtain permission from the circuit court to appeal *in forma pauperis*.

## Conclusion

The Court denies Petitioner's Amended Petition with prejudice. Dkt. 21. The Clerk is directed to enter judgment accordingly, terminate any pending motions,

and close the file.

**DONE AND ORDERED** at Tampa, Florida, on March 16, 2020.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record
Petitioner, pro se